JUDGE STEIN

FILE COPY

GREENBERG TRAURIG, LLP
James W. Perkins (JWP 6684)
MetLife Building, 200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

**08 CV 11187**

*Attorneys for Plaintiff ML Private Finance LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                                  :
ML PRIVATE FINANCE LLC,                                           :     Civil Action No.: 08 CV _____
                                                                  :
                   Plaintiff,                           :
                                                                  :
      - against -                                                :
                                                                  :
HALSEY McLEAN MINOR, THE HALSEY McLEAN                            :
MINOR REVOCABLE TRUST DATED NOVEMBER                              :
3, 2004 and DOES 1 through 50,                                    :
                                                                  :
                 Defendants.                          :
                                                                  :
----------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LAW OFFICES OF
GREENBERG TRAURIG, LLP
*Attorneys for Plaintiff*
*ML Private Finance LLC*
METLIFE BUILDING, 200 PARK AVENUE
NEW YORK, NEW YORK 10166
MAIN NO.: (212) 801-9200
FACSIMILE NO.: (212) 801-6400

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES .......................................................................................................ii, iii

PRELIMINARY STATEMENT .......................................................................................................1

FACTS ..............................................................................................................................................4

ARGUMENT ....................................................................................................................................4

    POINT I    PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM FURTHER IMPAIRING THE PLEDGED COLLATERAL .................4

        A. Plaintiff Will Be Irreparably Harmed By Defendants' Sale Or Transfer Of The Collateral .....................................................5

        B. Plaintiff Will Likely Prevail On The Merits Of Its Claims .............................7

            1. Plaintiff Will Likely Prevail On Its Breach Of Contract Claim ..................7

            2. Plaintiff Will Likely Prevail On Its Fraudulent Conveyance Claim ...........7

            3. Plaintiff Will Likely Prevail On Its Specific Performance Claim ...............8

            4. Plaintiff Will Likely Prevail On Its Claim For A Permanent Injunction.....9

        C. The Balance Of Hardship Favors Plaintiff .....................................................10

CONCLUSION .............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Algonquin Power Corp. v. Trafalgar Power,*
2000 U.S. Dist. LEXIS 20331 (N.D.N.Y. Nov. 8, 2000) .................................................. 4

*CBS Inc. (CBS Records Div.) v. Tucker,*
412 F.Supp. 1222 (S.D.N.Y. 1976) .................................................................................. 10

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (U.S. 2006) ............................................... 9

*Fisher-Price, Inc. v. Well-Made Toy Manufacturing Corp.,*
25 F.3d 119 (2d Cir. 1994) ................................................................................................. 4

*Ger-Nis Int'l, LLC v. FJB, Inc.,*
2007 U.S. Dist. LEXIS 18403 (S.D.N.Y. March 1, 2007) ................................................ 6

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70 (2d Cir. 1979) ................................................................................................. 4

*Mason Tenders Dist. Council Pension Fund v. Messera,*
1997 WL 223077, *aff'd* 131 F.3d 131 (S.D.N.Y. 1997) ..................................................... 4

*New York Land Co. v. Republic of Philippines,*
634 F.Supp. 279 (S.D.N.Y. 1986) ................................................................................. 5, 6

*Republic of Philippines v. Marcos,*
806 F.2d 344 1986 U.S. App. LEXIS 34155 (2d Cir. N.Y. 1986) .................................... 5

*Swift & Co. v. United States,*
276 U.S. 311 (1928) ........................................................................................................... 2

*United States v. W.T. Grant Co.,*
73 S. Ct. 894 (1953) ........................................................................................................... 2

*Yakus v. United States,*
321 U.S. 414, 64 S. Ct. 660, 88 L.Ed. 834 (1944) ............................................................. 2

*Zeltzer v. Regal V. World-Wide Holdings,*
1997 U.S. App. LEXIS 6130 (2d Cir. N.Y. Mar. 25, 1997) ............................................... 9

**State Cases**

*Furia v. Furia,*
116 AD2d 694, 498 N.Y.S.2d 12 (2d Dept. 1986) ............................................................. 7

*Noise in the Attic Productions v. London Records*,
   10 AD3d 303, 782 N.Y.S.2d 1 (1st Dept. 2004) ..................................................................7

*Piga v. Rubin*,
   300 A.D.2d 68, 751 N.Y.S.2d 195 (2002) ...........................................................................8

*SL v. DC, PDL, CD Autos, Inc., All Island Motors, Corp. and P & C Motors, LLC*,
   17 Misc.3d 1133(A), 2007 WL 4198248 (N.Y. Sup. Ct. Nassau Co. Nov. 28, 2007) .................7

*Wall Street Assocs. v. Brodsky*,
   257 A.D.2d 526 (N.Y. App. 1st Dep't 1999) ........................................................................8

## Rules

Federal Rule of Civil Procedure 65 .........................................................................................5

Federal Rule of Procedure 65(b) ............................................................................................5

Plaintiff, ML Private Finance LLC ("ML Private" or "Plaintiff"), by its attorneys, Greenberg Traurig, LLP, submits this Memorandum in support of its Motion for an *Ex Parte* Temporary Restraining Order and Preliminary Injunction, temporarily restraining and enjoining Halsey McLean Minor ("Minor") and the Halsey McLean Minor Revocable Trust (the "Trust") (collectively "Defendants" or "Borrowers") from attempting to, or encumbering, selling, or otherwise transferring certain specified pieces of artwork (the "Artwork") that have been pledged to Plaintiff as collateral (the "Collateral") under a loan agreement that is now in default.

## PRELIMINARY STATEMENT

Plaintiff and Defendants are respectively lender and borrower under a loan agreement and related note that is now fully matured; however, Defendants are in default for non-payment and for their unauthorized transfer of pledged Collateral and failure to pay Plaintiff the proceeds of such sales. Pursuant to the terms of an Amended and Restated Loan and Security Agreement between Plaintiff and Defendants dated December 19, 2007 (the "Loan Agreement"), Defendants granted to Plaintiff a security interest in the Artwork in exchange for Plaintiff extending a loan facility in the amount of $25,000,000,, as evidenced by a Promissory Note (the "Note") dated December 19, 2007.[1] The Note matured on December 17, 2008 and as of December 19, 2008, Defendants owe Plaintiff not less than $25,226,031.08, exclusive of accrued and accruing interest, fees, costs, and other charges.

Moreover, Plaintiff has recently learned that earlier in the year, on at least three occasions, Defendants had sold, encumbered or otherwise transferred millions of dollars worth of the Artwork that Defendants had pledged as Collateral and whose proceeds should have been used to pay down outstanding amounts under the Loan Agreement. Upon Plaintiff's information

---

[1] The facts supporting this application are set forth in the Affidavit of Nathaniel Cooke ("Cooke Aff."), Declaration of James W. Perkins ("Perkins Decl."), to which the Court is respectfully referred. (A copy of the Loan Agreement and Note are respectively attached to the Cooke Affidavit as Exhibits A and B.)

and belief, Defendants are preparing to sell, or otherwise transfer, their interests in more of this Artwork, as Defendants have already sold - and attempted to sell - artwork without the consent of Plaintiff and in breach of the terms of the Loan Agreement, and without paying Plaintiff some or all of the proceeds of the sale or anticipated sale of that Artwork. Absent injunctive relief, Defendants' sale, encumbrance or other transfer of the Artwork will cause Plaintiff irreparable harm, as Plaintiff has a good faith belief that Defendants do not have liquid assets to pay the Note for which the Artwork serves as Collateral.

> The purpose of an injunction is to prevent future violations, *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928), and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*United States v. W.T. Grant Co.*, 73 S. Ct. 894, 898 (1953).

Although injunctive relief is an extraordinary remedy, *Yakus v. United States*, 321 U.S. 414, 64 S. Ct. 660, 674, 88 L.Ed. 834 (1944), Defendants' blatant disregard for, and violation of, the terms of the Loan Agreement, is conduct that warrants an "extraordinary" remedy. In at least three instances of which Plaintiff is aware, which are discussed in more detail in the accompanying Affidavit of Nathaniel Cooke, without Plaintiffs' knowledge or consent, earlier this year, in clear violation of the terms of the Loan Agreement, Defendants sold and/or transferred Artwork, which serves as Collateral. Proceeds of these sales or transfers were not paid to Plaintiff. Moreover, Plaintiff has recently become aware of another instance in which Defendants attempted to sell additional Artwork and, based on the sale proceeds that Defendants

believed they would be receiving from the anticipated sale, purchased additional art - actions that were not expected by Plaintiff at the time that the Loan Agreement was executed and are, in fact, precluded under its terms.[2]

As demonstrated below and in the accompanying Affidavit, Plaintiff has satisfied the test for a preliminary injunction and temporary restraining order. Plaintiff will likely succeed on the merits since Defendants' breaches of the Loan Agreement -- by selling and transferring collateral and diverting sales proceeds without plaintiff's knowledge or consent -- are obvious. Moreover, Plaintiff is facing irreparable harm, as demonstrated by the fact that Defendants are in default of the Loan Agreement for failing to pay the loan Advances back when due and, instead surreptitiously selling off the Collateral and transferring the proceeds of sale away from Plaintiff. Plaintiff's irreparable harm is imminent as, upon information and belief, Defendants are committed under various agreements or negotiating various agreements to sell the Collateral, all without Plaintiff's knowledge or consent.

The equities also balance decidedly in favor of Plaintiff: Defendants are in clear breach of their obligations under the Loan Agreement and are dissipating the Collateral. The requested relief will not put Defendants in a worse position than they would be in had they abided by their agreement with Plaintiff. On the other side, Plaintiff has advanced over $25 million to Defendants, and the Collateral is the sole known source of repayment of these sums. Unless enjoined, Defendants will continue their clear pattern of transferring the collateral away from Plaintiff, and Plaintiff will likely not be repaid the money it is owed, all to Plaintiff's irreparable harm.

---

[2] In fact, according to press reports, on September 2, 2008, Sotheby's art auction house sued Defendant Halsey, in federal court, for breach of contract for failing to pay $16.8 million for three paintings for which he had been the highest bidder. (Felicia R. Lee, *Auction House Sues Buyer For Painting*, NEW YORK TIMES, September 5, 2008, at E3, a copy of which is attached to the Cooke Aff. as Exh. E.)

## FACTS

The facts are set forth in detail in the accompanying Affidavit of Nathaniel Cooke, an officer of Plaintiff ML Private Finance LLC, the Declaration of James W. Perkins, and the Complaint herein, to which the Court is respectfully referred.

## ARGUMENT

### PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM FURTHER IMPAIRING THE PLEDGED COLLATERAL

In order to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief. *See Fisher-Price, Inc. v. Well-Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Moreover, a district court is authorized to grant a temporary restraint of assets pursuant to Federal Rule of Civil Procedure 65, and under the Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief. *See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077, *aff'd* 131 F.3d 131 (S.D.N.Y. 1997) (acknowledging that "[a]lmost all the Circuit Courts [including the Second Circuit] have held that Rules 64 and 65 is available to freeze assets *pendente lite* under some set of circumstances). *See also Algonquin Power Corp. v. Trafalgar Power*, 2000 U.S. Dist. LEXIS 20331 (N.D.N.Y. Nov. 8, 2000) (court granted motion for preliminary injunction freezing proceeds of a money judgment in which plaintiff had security interest).

Furthermore, Federal Rule of Procedure 65(b) permits the issuance of a temporary restraining order *ex parte*. It states that:

> [t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The facts showing the "immediate and irreparable injury, loss or damage" are discussed in the Cooke Affidavit, the Complaint and are further discussed below. Regarding the second factor, the Perkins Declaration and the Cooke Affidavit set forth reasons why notice for entry of the temporary restraining order should not be required.

As shown below, Plaintiff meets the above-referenced criteria for preliminary injunctive relief and faces imminent harm. Accordingly Plaintiff is entitled to the Court's issuance of a temporary restraining order *ex parte*.

### A. Plaintiff Will Be Irreparably Harmed By Defendants' Sale Or Transfer Of The Collateral

For "irreparable harm," a movant must demonstrate injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by award of monetary damages. *See Republic of Philippines v. Marcos*, 806 F.2d 344, 1986 U.S. App. LEXIS 34155 (2d Cir. N.Y. 1986); *New York Land Co. v. Republic of Philippines*, 634 F.Supp. 279, 281 (S.D.N.Y. 1986) (granting preliminary injunctive relief to prevent transfer of debtor's assets). This Court has held that a debtor's transfer of assets away from the reach of a creditor potentially rending the debtor judgment proof constitutes irreparable harm. *Id.* In *New York Land Co.*, 634 F.Supp. at 281, this Court granted a preliminary injunction to the Republic of the Philippines to preclude several real estate companies, serving as nominees for former President of the Philippines Ferdinand Marcos and his wife Imelda Marcos, from transferring or encumbering property. The Court held that without a preliminary injunction, the properties at issue "could

pass quickly out of the plaintiff's reach through transactions involving the various tiers of offshore holding companies, which are shrouded in secrecy," thus denying the Republic of the Philippines "any hope of protecting its claim to ownership of the Properties." *New York Land Co.*, 634 F.Supp. at 288

So too here. As set forth in the Affidavit of Mr. Cooke, Plaintiff has learned that throughout 2008, and without the knowledge or permission of Plaintiff, Defendants have engaged in a series of transactions to sell and/or attempt to sell the Collateral and then to transfer the proceeds beyond the reach of Plaintiff. (Cooke Aff. ¶¶ 32-38.) These sales and transfers constitute clear violations of the Loan Agreement, including Section 7.2(a) - "Negative Covenants - Collateral", that preclude the sale, assignment, or encumbrance of the Artwork, and Plaintiff's rights in the Collateral. (*Id.* 22; Compl. 32-34.)

Without injunctive relief, Plaintiff will be powerless to stop Defendants from continuing to sell off the Collateral and absconding with the proceeds. Moreover, Plaintiffs have information that, other than the Collateral, Defendants do not possess sufficient assets to satisfy their debt to Plaintiffs. (Cooke Aff. 43.) Accordingly, Plaintiff will suffer "irreparable harm" without injunctive relief. *See Ger-Nis Int'l, LLC v. FJB, Inc.*, 2007 U.S. Dist. LEXIS 18403 (S.D.N.Y. March 1, 2007) (court granted plaintiff's motion for temporary injunction precluding defendants from dissipating trust assets that would otherwise preclude defendants from paying funds owed to plaintiff). A temporary restraining order is also appropriate because, upon information and belief, Defendants have entered into or are negotiating agreements to sell more of the Collateral imminently. (Cooke Aff. 45-49.)

### B. Plaintiff Will Likely Prevail On The Merits Of Its Claims

#### 1. Plaintiff Will Likely Prevail On Its Breach Of Contract Claim

Under New York law[3], to prevail on its breach of contract claims with regards to the Loan Agreement and the Promissory Note that underlie the Loan Agreement, Plaintiff must prove, *inter alia*: (1), the formation of a contract between Plaintiff and Defendants, (2) performance by Plaintiff, (3) Defendants' failure to perform, and (4) resulting damage. *See Noise in the Attic Productions v. London Records*, 10 AD3d 303, 307, 782 N.Y.S.2d 1 (1st Dept. 2004) (stating elements of breach of contract action); *Furia v. Furia*, 116 AD2d 694, 498 N.Y.S.2d 12 (2d Dept. 1986) (same).

As alleged in the Complaint, Defendants have drawn over $25 million in Advances under the Loan Agreement and they are obligated to pay them back under the Note. The Note has matured, but Defendants have not repaid a substantial portion of the Advances, much less made payment of all amounts that are now due and owing. As is also alleged in the Complaint and as supported by the Cooke Affidavit, Defendants have engaged in a series of sales and transfers of the Collateral in breach of the Loan Agreement and the Note. The "damages" are evident - the $25,226,031.08 that Defendants now owe to the Plaintiff.

#### 2. Plaintiff Will Likely Prevail On Its Fraudulent Conveyance Claim

New York Debtor and Creditor Law § 276 defines a "fraudulent conveyance" as "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." The "actual intent to hinder, delay or defraud" is established by "badges of fraud" that give rise to an inference of intent. *See SL v. DC, PDL, CD Autos, Inc.*,

---

[3] The parties agreed under section 10.17 of the Loan Agreement that New York law applies to its interpretation.

*All Island Motors, Corp. and P & C Motors, LLC*, 17 Misc.3d 1133(A), 2007 WL 4198248 (N.Y. Sup. Ct. Nassau Co. Nov. 28, 2007). Among the "badges" to be considered: 1) a close relationship between the parties to the alleged fraudulent transaction, 2) a questionable transfer not in the usual course of business, 3) inadequacy of the consideration, 4) transferor's knowledge of the creditor's claim and the inability to pay it, and 5) retention of control of the property by the transferor after the conveyance. *See Wall Street Assocs. v. Brodsky*, 257 A.D.2d 526 (N.Y. App. 1st Dep't 1999) (enumerating factors).

Defendants are clearly aware of the facts that the Artwork, pledged as Collateral under the Loan Agreement, cannot be sold without prior consent of, or notice to, Plaintiff. They are further aware that they have failed to pay Plaintiff of the substantial portion of the proceeds associated with these sales, even though the Note was then maturing and even though approximately $25 million had been advanced under the Loan Agreement. (Cooke Aff. 32-34.) Given Defendants' obvious awareness of their debt to Plaintiff, their failure to re-pay it from the proceeds of the unauthorized sale of Collateral, but instead to purchase additional art, together with Defendants' failure to maintain an aggregate net liquidity required under the Loan Agreement, all demonstrate that Plaintiff will likely succeed in establishing factor #4 *i.e.*, the "transferor's knowledge of the creditor's claim and the inability to pay it," and accordingly, permit inference of "actual" intent to hinder, delay or defraud Plaintiff.

### 3. Plaintiff Will Likely Prevail On Its Specific Performance Claim

Under New York law, to prevail on its specific performance claim, Plaintiff must demonstrate that (1) plaintiff substantially performed its contractual obligations and was willing to perform its remaining duties, (2) defendant is able to convey the property, and (3) there is no adequate remedy at law. *See Piga v. Rubin*, 300 A.D.2d 68, 751 N.Y.S.2d 195 (2002).

Again, Plaintiff will likely succeed on this cause of action. First, Plaintiff substantially performed its contractual obligations by making Advances of over $25,000,000 to Defendants, under the Loan Agreement. Second, as demonstrated above and as alleged in the Complaint, Defendants are in breach of the Loan Agreement for, among other reasons, failure to pay on the Note when due. According to Section 8.2 ("Remedies") of the Loan Agreement, upon default, Plaintiff may, among other options, i) liquidate and/or sell any or all of the Collateral, or ii) apply any or all of the Collateral as well as the proceeds of any such Collateral to the Obligations, *i.e.*, Defendants' indebtedness. (*See* Section 8.2 on page 30 of the Loan Agreement, attached as Exhibit A of the Complaint.) Third, as Defendants possess or control the Artwork that serves as Collateral they, accordingly, are "able to convey" the property at issue. (*See* Schedule 1 of the Loan Agreement, attached as Exhibit A of the Complaint.)

As demonstrated in the Cooke Affirmation, Defendants have no known liquid assets other than the Collateral; without an order requiring delivery of the Collateral to Plaintiffs, there will be no assets to pay back the Advances. (Cooke Aff. 43.) Thus, as there is no adequate remedy at law, ML Private is likely to prevail on it specific performance claim. *See Zeltzer v. Regal V. World-Wide Holdings*, 1997 U.S. App. LEXIS 6130 *7 (2d Cir. N.Y. Mar. 25, 1997) (court remanded entry of injunctive order based on evidence that Plaintiff would otherwise be unable to collect a money judgment from Defendant).

    4.    **Plaintiff Will Likely Prevail On Its Claim For A Permanent Injunction**

Plaintiff is also likely to succeed on its claim for a permanent injunction. In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (U.S. 2006), the Supreme Court articulated a four-factor test that a plaintiff must satisfy to be entitled to such relief: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate

for that injury; (3) considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

Plaintiff has addressed above, and in the accompanying Affidavit, of how it faces irreparable injury and why remedies available at law will likely prove inadequate to compensate for that injury. (*See* above at Section 1A of "Argument".) The "balance of hardship" factor is addressed below. As to the final factor, the "public interest" would not be disserved by a permanent injunction, as Plaintiff seeks to prevent Defendants from encumbering, selling or otherwise transferring the Artwork that has been pledged to Plaintiff as Collateral under a commercial agreement. In fact, the public interest will be served by preventing Defendants from violating their agreement.

### C.     The Balance Of Hardship Favors Plaintiff

Plaintiff believes that it has established the required likelihood of success as to Defendants' liability for breach of contract and fraudulent conveyance and its entitlement to the remedies of specific performance and injunctive relief. In any event, Plaintiff has, at minimum, raised serious questions going to the merits of its claims.

The "balance of hardships" test requires the movant to demonstrate that hardships tip decidedly in its favor; "decidedly" means that, whatever potential harm is shown by the non-movant, the quantum of harm that has traditionally been required to justify issuance of preliminary injunction remains on the movant. *See CBS Inc. (CBS Records Div.) v. Tucker*, 412 F.Supp. 1222, 1230 (S.D.N.Y. 1976).

Here, there can be no serious question that the balance of harms tips decidedly in favor of the Plaintiff. Without the requested injunctive relief, Defendants will likely continue their pattern of selling off the Collateral and transferring the proceeds beyond the reach of Plaintiff.

Plaintiff, then, will have no recourse under the Loan Agreement to repayment of the over $25 million it advanced to Defendants.

On the other hand, a temporary restraint and preliminary injunction will not take anything away from the Defendants that they are otherwise obligated to relinquish under the Loan Agreement. As provided under the Loan Agreement, in an event of default, Plaintiff must be allowed to take possession of the Collateral so that *it*, not Defendants, may choose how to sell it or otherwise dispose of it. Since Defendants have defaulted on their obligations under the Loan Agreement, including their willful disregard of their promises to preserve the Collateral for Plaintiff's benefit, they may not be heard to complain that any residual rights they may have in the Collateral should be protected at the expense of Plaintiff.

## CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that its application for a temporary restraining order and preliminary injunction be granted in all respects.

Dated: New York, New York
December 22, 2008

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins (JWP-6684)
*Attorneys for Plaintiff ML Private Finance LLC*
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200