USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ML PRIVATE FINANCE LLC,

                Plaintiff,

- against -

HALSEY McLEAN MINOR, THE HALSEY McLEAN MINOR REVOCABLE TRUST DATED NOVEMBER 3, 2004 and DOES 1 through 50,

                Defendants.

------------------------------------------------------------------ X

No.: 08 CV 11187 (SHS)

[PROPOSED] ORDER DIRECTING THE APPOINTMENT OF A **RECEIVER OF PROPERTY**

      WHEREAS, the Clerk of the Court having entered a judgment pursuant to Fed. R. Civ. P. 54(b) against Defendants Halsey Minor and the Minor Trust (collectively "Judgment Debtors") and in favor of Plaintiff in the amount of $21,502,907.60 in principal and $124,044.74 in pre-judgment interest for a total amount of $21,626,952.34;

      WHEREAS, the Judgment remaining uncollected;

      WHEREAS, on February 3, 2010, the Clerk of the Court having issued a Writ of Execution regarding property owned by Judgment Debtors;

      WHEREAS, on March 18, 2010, the United States Marshal having levied the Writ of Execution upon Paul Kasmin Gallery and Christie's, Inc.;

      WHEREAS, Plaintiff having moved by order to show cause pursuant to Federal Rule of Civil Procedure Rule 69 and N.Y. Civil Practice Law and Rules §§ 5225(b) and 5228, as applied through Rule 69, and Judgment Debtors having opposed such motion, in part, and a hearing have been held, and after due deliberation thereon;

NOW, THEREFORE, IT IS HEREBY:

ORDERED that, upon taking oath pursuant to CPLR § 6402, Phillips, de Pury & Company, LLC ("Phillips") is appointed as receiver for all property of Judgment Debtors in Christie's and Paul Kasmin Gallery's possession, including, but not limited to, the items listed on Schedule A attached hereto, and any other property of Judgment Debtors in this District; and it is further

ORDERED that Phillips, as the appointed receiver, is authorized under the supervision and with the assistance of the U.S. Marshal, to take all necessary steps to secure and obtain all such property belonging to Judgment Debtors in Christie's and Paul Kasmin Gallery's possession,; and it is further

ORDERED that anyone interfering with the execution of this Order is subject to arrest by the United States Marshal and/or his or her representative; and it is further

ORDERED that Phillips is directed to market and sell Judgment Debtor's property; and it is further

ORDERED that as provided in the attached consignment agreement dated March 29, 2010 among Phillips and the parties in this action (the "Consignment Agreement"), a copy of which is attached hereto and is incorporated herein, all proceeds from the sale of Judgment Debtors' property shall be delivered to MLPF in partial satisfaction of the Judgment; and it is further

ORDERED that Phillips will keep written accounts pursuant to CPLR § 6404; and it is further

ORDERED that administrative expenses shall be taxed as is provided in the Consignment Agreement.

Dated: April, 2010

_____
U.S.D.J

# PHILLIPS
de PURY & COMPANY

## CONSIGNMENT AGREEMENT

Consignor: Halsey Minor and the Halsey McLean Minor Revocable Trust Dated November 3, 2004
Consignor Address: 199 Fremont Street, 12th Floor
San Francisco, California 94105

Contract Number: 04NY5660

Secured Party: ML Private Finance LLC
1600 Merrill Lynch Drive, 1st Floor
Pennington, New Jersey 08534

Department: **Contemporary Art – NY and Design-NY**

Client Number: 20187

Contract Date: 29 March 2010

Sale No.: NY010110
Sale Dates: 13 May 2010 and 5 June 2010

The information set forth in these boxes is for ease of reference only. You agree to be bound by the terms and conditions set forth in the body of this Agreement.

| | |
|---|---|
| **COMMISSION** 0% of the hammer price of each work sold. | **PHOTOGRAPHY** Illustration charges waived |
| **LOSS OR DAMAGE TO PROPERTY** Phillips to absorb | **MATTING AND FRAMING** Phillips to absorb |
| **SHIPPING** Phillips will arrange at our expense to secure, insure, and transport property to our custody and control and, in the event the Property is unsold, back again to such location as you and the Secured Party shall direct | **INSTALLATION CHARGES** Phillips to absorb |
| **UNSOLD PROPERTY** Unsold charge waived | **WITHDRAWAL** Withdrawal subject to our and Secured Party's approval. If approval given, reimbursement of all out-of-pocket expenses incurred by us in connection with such Lot. |
| **SPECIAL TERMS**  Net Proceeds: See Paragraph 11     Payment of Net Proceeds: See Paragraph 11 | |

Thank you for consigning your property to us. As used herein, "Phillips," "we," "us" and "our" mean Phillips de Pury & Company LLC; "you," "your" and "Consignor" mean Halsey Minor and/or the Halsey McLean Minor Revocable Trust Dated November 3, 2004; and "Secured Party" and "MLPF" mean ML Private Finance LLC. Consignor and Secured Party are parties to secured financing arrangements as set forth in that certain Amended and Restated Loan and Security Agreement dated as of December 19, 2007 (as amended, restated or otherwise modified from time to time, the "Loan Agreement") and related Security Agreements (New Artwork) dated July 30, 2008 and August 28, 2008, respectively (the "Security Agreements") pursuant to which MLPF has a perfected security interest in the Property. The terms and conditions of the consignment, which are subject and pursuant to that certain Court order dated March 29, 2010 (the "Order") in the action captioned ML Private Finance LLP v. Halsey McLean Minor et al., No. 11187 (SHS)(S.D.N.Y.) are as follows:

Consignor (Initials)     Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

1. CONSIGNMENT; CONDITIONS TO EFFECTIVENESS

Consignor hereby consign to us, for the benefit of MLPF as secured lender for the repayment of certain secured debt obligations owed by Consignor to MLPF, the property listed on the attached Property Schedule (the "Property") (each item of Property may sometimes be referred to in this Agreement as a "Lot") which we, as your exclusive agent and as bailee and pledge agent for MLPF, will offer for sale at public auction, unless otherwise agreed by all of the parties hereto, subject to the provisions set forth below, the Conditions of Sale printed in the auction catalogue and any additional notices or terms printed in the auction catalogue or announced by the auctioneer. Phillips hereby expressly acknowledges and agrees (a) that MLPF has a perfected first priority security interest and lien on the Property and that the Property is being consigned for sale in order to satisfy certain indebtedness of Consignor to MLPF and (b) that until each Lot is sold or returned to MLPF (or you, if you have indefeasibly and finally repaid all amounts you owe to MLPF) pursuant to the terms of this Agreement, Phillips is acting as Consignor's bailee, and as pledge agent for the benefit of MLPF, but only for purposes of MLPF's continued perfection of its lien on the Property. Subject to the foregoing and the terms of this Agreement, MLPF hereby consents to the consignment of the Property subject to (i) receipt by MLPF of written consents from each of Christie's, Inc. ("Christie's") and Art Assure Ltd. LLC ("Art Assure"), in form and substance satisfactory to MLPF, that each of Christie's and Art Assure (A) consents to the unconditional transfer of the Property to Phillips and appointment of Phillips as receiver to sell the Property and (B) unconditionally and irrevocably waives and releases any and all claims and liens with respect to the same and (ii) the issuance by United States District Court of the Southern District of New York (Stein, D.J.) of the Order appointing Phillips as the receiver to consign and sell the Property through Phillips without the involvement of Consignor. In the event the foregoing consents and order are not received by MLPF on or before 5:00 pm, April 1, 2010 this Agreement shall be void and of no further force or effect.

2. VENDOR'S COMMISSION AND BUYER'S PREMIUM

For our services, we will receive and retain from the proceeds of the sale of the Property a commission from you in the amount equal to 0% of the final bid price of each Lot sold (the "Hammer Price"). In addition, Phillips shall be entitled to receive a buyer's premium from the buyer of each Lot sold, which shall be calculated as a percentage of the Hammer Price, as set forth in the Conditions of Sale printed in the auction catalogue (the "Buyer's Premium") and which shall not exceed 25% of the Hammer Price up to and including $50,000 plus 20% of the Hammer Price above $50,000 up to and including $1,000,000 plus 12% of the Hammer Price above $1,000,000.

3. LOSS OR DAMAGE TO PROPERTY

(a) Phillips will be responsible to you and the Secured Party for any loss or damage to the Property in accordance with the provisions of this Paragraph 3 from the time of receipt by Phillips until the Property ceases to be in our custody and control. For purposes of this Agreement, Phillips will be deemed to have custody and control of the Property from the time that we collect the Property from its current location until it is released to the buyer if sold or returned in accordance with the instructions of MLPF (or you, if you have indefeasibly and finally repaid all amounts you owe to MLPF and MLPF has confirmed receipt of such payment in writing) if unsold.

(b) Depending upon when loss or damage occurs, each Lot will be insured for an amount equal to (i) 108% of the mean of our latest pre-sale estimates prior to sale or if there are no pre-sale estimates, our reasonable estimate of the Lot's auction value, (ii) 108% of the Hammer Price if sold or (iii) 108% of the reserve price, which is the minimum price at which Phillips may sell the Lot and which will not exceed its low pre-sale estimate (the "Reserve"), if unsold or, if the Lot was offered without reserve, the low pre-sale estimate (in each case, the "Insured Value"). The maximum amount of our liability to you resulting from loss or damage to any Property shall not exceed the Insured Value of such Property and shall be net of any commissions or expenses payable by you pursuant to this Agreement or the Buyer's Premium. Neither Phillips nor our insurers shall be responsible for loss or damage resulting from causes customarily excluded by insurers, such as (A) inherent defects in the Property; (B) woodworm or other destructive organisms; (C) humidity or change of weather or other atmospheric conditions; (D) damage caused by glass (e.g., in picture frames, bulbs, etc.); (E) expected wear and tear; and (F) damage caused by war, terrorism or radioactive contamination.

(c) MLPF shall be named as the primary loss payee with respect to the proceeds of any insurance claim hereunder; provided, however, that if MLPF has been indefeasibly and finally repaid all amounts owed to MLPF by you and MLPF has confirmed receipt of such payment in writing, any further payments shall be made to you.

4. SHIPPING

We will arrange, at our cost and expense, shipment of the Property from its current location to us and, if any Property is unsold, from us to MLPF or you, if you have indefeasibly and finally repaid all amounts you owe to MLPF and MLPF has confirmed receipt of such payment in writing. We will also pay all applicable customs duties and customs user fees on the Property.

5. OTHER SALE-RELATED EXPENSES

We agree to pay for (i) catalogue illustration of the Property, (ii) catalogue production of both a single owner and various owner catalogue, (iii) catalogue mailing, (iv) agreed upon restoration and conservation as necessary, (v) matting and/or framing as necessary, (vi) such tests or procedures that Phillips in our sole judgment deems necessary or desirable to verify the authenticity, attribution or quality of the Property, (vii) exceptional installation charges and (viii) special advertising and marketing efforts to promote the sale of the Property, as set forth in our Proposal Letter, dated March 3, 2010 (the "Proposal Letter").

6. PRE-SALE ACTIVITIES

(a) As described more fully in the Proposal Letter, the Property (except for the five Lots specifically identified on the attached Property Schedule as works which will be sold privately) will be offered for sale in New York in a single owner auction of Contemporary Art and Design currently scheduled for the evening of May 13, 2010 (the "Evening Auction"), a daytime auction of Contemporary Art currently scheduled for May 14, 2010 and an auction of Design currently scheduled for June 5, 2010. The Property to be offered in the Evening Auction shall be featured in a single owner catalogue and shall be the first lots of such auction. Subject to the foregoing, we have the sole right in our reasonable discretion, and as we deem appropriate: (i) to select, change or reschedule the date and time for the auction of the Property, as consented to by the Secured Party; (ii) to group the Property into a Lot or Lots; (iii) to market and promote the sale of the Property and the auction; provided, however, that notwithstanding anything to the contrary set forth in the Proposal Letter, Phillips shall not send any Property to London or any other location outside of New York City and our control for a pre-sale exhibition or any other purpose without the prior written consent of the Secured Party; (iv) to provide photographs, illustrations and descriptions of the Property for the catalogue and other marketing materials; (v) to use the marketing materials before, during and after the auction without payment to you or the Secured Party for doing so; (vi) to arrange the lot order of the Property within each auction; (vii) to consult with and rely on any expert, and research or employ other procedures, to verify the authenticity, attribution or quality of the Property whether before or after the auction; and (viii) to include in any marketing materials (A) the description of the owner of the Property as agreed with you and (B) any other information provided to or discovered by us in connection with the Property.

(b) Phillips shall have the right to photograph, illustrate or otherwise produce images of the Property. Subject to the rights of the artists who created the Property, Phillips shall retain the exclusive copyright to all catalogue and other illustrations and descriptions of the Property created by us and shall have the right to use such illustrations and Property descriptions in whatever way we deem appropriate, both before and after the sale.

(c) We make no representations or warranties to you or the Secured Party with respect to the Property, its authenticity, attribution, condition or otherwise.

(d) We hereby represent, warrant and covenant to MLPF that the Property can be timely sold at the auctions referred in Paragraph 6(a) above and that we hereby irrevocably and unconditionally waive and release any and all claims and liens with respect to the Property and the proceeds thereof.

2

*[Initials]*  *Phillips (Initials)*

7. RESERVES AND ESTIMATES

(a) Each Lot will be sold subject to a pre-sale estimate range printed in the auction catalogue and a Reserve mutually agreed by us and MLPF. We will keep the Reserve confidential. Any Reserve set in an amount other than a bidding increment (as described in the Conditions of Sale printed in the auction catalogue) will be rounded down to the next bidding increment. However, Phillips may sell any Lot below its Reserve provided MLPF or your attorneys, as the case may be, receives the net amount which such recipient of Net Sale Proceeds (as such term is defined in Paragraph 11 below) would have received had such Lot been sold at its Reserve. The Reserve and any printed pre-sale estimates shall not include the Buyer's Premium or any applicable taxes.

(b) We make no representations or warranties to you or MLPF about the actual price at which a Lot will sell and you and MLPF agree not to rely on pre-sale estimates as a prediction or guarantee of the value of a Lot or the price at which it will be sold.

8. REPRESENTATIONS AND WARRANTIES

(a) You represent and warrant to us and to any buyer of the Property, now and at the time of the sale, that: (i) you are the sole and absolute owner of the Property; (ii) you have the right and authority to consign the Property to us for sale and to sell it in accordance with the terms of this Agreement; (iii) the Property is now, and until the completion of sale by Phillips will be, free and clear of all liens, encumbrances and claims of others except for the lien of MLPF (it being understood that certain other junior and subordinate liens are purported to be held by junior creditors); (iv) there is not now, and until the completion of sale by Phillips there will not be, any restriction on your right to consign the Property for sale or on our right to sell the Property; (v) good and marketable title and right to possession will pass to a buyer upon receipt by us of the full purchase price for a Lot free and clear of any liens, encumbrances and claims of others; (vi) you have no reason to believe that the Property is counterfeit or not as described on the Property Schedule; (vii) you have furnished us with all of the information and documents in your possession or control concerning the Property, including information about its condition, provenance and authenticity and all such information is accurate to the best of your knowledge; (viii) if the Property has been imported into the United States, to the best of your knowledge, the Property has been lawfully so imported and has been lawfully and permanently exported as required by the laws of any country (including any laws or regulations applicable in the European Union) in which it was located; (ix) unless otherwise noted, required declarations upon the export and import of the Property have been completed fully and accurately and any duties and taxes on the export and import of the Property have been paid; (x) to the best of your knowledge, there is no restriction on our right to photograph, illustrate, describe or exhibit the Property or to use photographs or other materials provided to us by you and (xi) you will pay any and all taxes and/or duties that may be due in connection with the sale of the Property.

(b) You further represent and warrant to us that the address and contact information for you set forth on the first page of this Agreement is complete and accurate. We reserve the right to request that you furnish us with government-issued identification and proof of address.

(c) You agree that the foregoing representations and warranties are for the benefit of Phillips, MLPF and buyers of the Property and that such representations and warranties shall survive the completion of the transactions contemplated by this Agreement. You further agree to notify us promptly in writing of any events or circumstances to your knowledge that may cause such representations and warranties to be inaccurate or breached in any way.

9. CONDUCT OF THE SALE

(a) We have absolute discretion in all aspects of the conduct of any auction, including, but not limited to, the time, manner and place of exhibition and auction of the Property and the rules and procedures relating to bidding and sale.

(b) The auction of the Property shall be conducted in accordance with our Conditions of Sale and Authorship Warranty printed in the auction catalogue. In the event of any conflict between the

3

Consignor (Initials)    Phillips (Initials)

Conditions of Sale and Authorship Warranty, on the one hand, and this Agreement, on the other hand, the Conditions of Sale and Authorship Warranty will prevail in respect of your relationship with the buyer of any Property, but this Agreement will prevail in respect of your relationship with Phillips.

(c) All bids to protect the Reserve will be made by us as agent for you and MLPF. None of you, MLPF or anyone whom we determine in our reasonable discretion may be acting on your respective behalf, may bid on the Property at any auction; provided, however, that the foregoing prohibition shall not affect MLPF's right to credit bid for the Property or any Lot outside of the auction contemplated hereby.

(d) If a Lot is not sold, we will announce that it has been "passed," "withdrawn," "returned to owner" or "bought-in."

(e) Employees of Phillips, including the auctioneer, may bid at the auction by placing absentee bids so long as they do not know the Reserve and otherwise comply with our employee bidding procedures.

10. WITHDRAWAL PRIOR TO AUCTION

(a) We may withdraw any Property at any time before sale without any liability if in our reasonable judgment after consultation with you and MLPF (i) there is doubt as to its authenticity, authorship or attribution; (ii) there is doubt as to your title or your authority to place it for sale; (iii) any representation or warranty that you have made to us is materially inaccurate or we reasonably doubt its accuracy; (iv) you have breached, or indicated that you intend to breach, any provision of this Agreement in any material respect or (v) the Property is damaged to the extent that it is not in the condition in which it was when we agreed to sell it.

(b) You may not withdraw any Property from sale after the date of this Agreement without the express written consent of us and MLPF. If we and MLPF consent to a withdrawal by you or if we withdraw any Lot for any reason described in subparagraph 10 (a) (ii), (iii) or (iv) above, you will reimburse us for all out-of-pocket expenses incurred by us in connection with such Lot (the "Withdrawal Fee"). If we withdraw any Lot pursuant to subparagraph 10 (a) (i) or (v) above, you will not be liable to us for the payment of the Withdrawal Fee.

11. SETTLEMENT

(a) Provided that we have received and collected payment in full from the buyer, Phillips will pay net proceeds (108% of the Hammer Price) in respect of the sale of a Lot ("Net Sale Proceeds") 24 hours following such receipt and collection (in each case, a "Settlement Date"). Phillips will make payment of all Net Sale Proceeds to MLPF up to the full amount of the judgment for principal and interest and other amounts owed to MLPF related to the Loan Agreement and the Security Agreements in accordance with the written instructions of MLPF. After such payment is made in full, (i) an amount equal to $4 million of any and all additional Net Sale Proceeds shall be placed in escrow for the benefit of MLPF from which to satisfy its court-awarded Costs of Collection, (ii) the next $200,000 in Net Sale proceeds shall be paid to us and (iii) any remaining balance shall be paid to Consignor's attorneys. Phillips will deposit upon receipt and collection of payment from buyers all Net Sale Proceeds payable to MLPF into a segregated, non-interest bearing escrow account that is held for the benefit of MLPF and provides MLPF with a valid security interest in such cash proceeds. Phillips may deduct from Net Sale Proceeds all costs of administering the escrow account, and Consignor shall be required to reimburse MLPF for the amount of such deduction. Phillips will not make payment of Net Sale Proceeds if we have received prior to the relevant Settlement Date notice of the buyer's intention to rescind the sale due to a bona fide claim relating to the warranty of authenticity or title. Payment of Net Sale Proceeds to all parties shall be made in US Dollars. In the event that we release any Lot to the buyer thereof prior to our receipt of payment in full therefor, we shall make payment of Net Sale Proceeds in respect of such Lot as provided in this subparagraph (a) within 24 hours following our release of such Property to the buyer.

(b) If we determine in our reasonable judgment that the sale of any Lot is subject to California Civil Code Section 986, we may withhold from the proceeds of the sale such amount as may be required

4

Consignor (Initials)     Phillips (Initials)

by law to be paid to the artist, the artist's estate or the California Arts Council. If we fail to withhold any such amount from Net Sale Proceeds, you agree to pay any such resale royalty that may be properly claimed thereafter or to reimburse Phillips to the extent that we have made such payment.

(c) We have no obligation to enforce payment by the buyer and we do not guarantee that payment will be received from the buyer of any Lot. While we are under no obligation to sue or make other collection efforts if a buyer does not pay us, we will make reasonable efforts to consult you and MLPF if a buyer defaults and we will take your and their views and our obligations as receiver into consideration. In the event that Phillips takes legal action to enforce payment, we may sue a defaulting buyer in our name, your name or both, as appointed receiver pursuant to the Order. If we collect from a buyer interest on late payment, we will retain for our own account only such portion of the interest as relates to the Buyer's Premium plus the out-of-pocket fees incurred by us in enforcing payment.

(d) We may in our sole discretion pursue any of the remedies set forth in the Conditions of Sale printed in the auction catalogue, including the right to cancel the sale and return the Property to MLPF. If a buyer fails to pay the purchase price of a Lot but we agree to remit to MLPF an amount equal to the Net Sale Proceeds, ownership of such Lot shall pass to Phillips, and we will have the benefit of all of your representations, warranties and indemnities set forth in this Agreement.

(e) We may, without notice to you, rescind a sale where we reasonably consider that the buyer has a valid claim under our Authorship Warranty or we reasonably believe that (i) there is a material breach of your representations and warranties set forth in this Agreement or (ii) there is merit to a third party adverse claim in connection with the Property. Within 10 days of receipt of our notice of rescission of the sale, you will return to us the Net Sale Proceeds paid to you in connection with the rescinded sale. Following receipt of the Net Sale Proceeds in cleared funds, we shall continue to hold the Lot as receiver on behalf of MLPF but if Phillips believes that doing so would expose us to any legal liability We will apply to the Court for a determination of rights.

(f) Phillips acknowledges that MLPF's lien on the Property shall continue in full force and effect until we have received and collected payment in full with respect to each Lot sold as provided in this Paragraph 11 or Paragraph 12 below; and thereafter MLPF's lien shall apply to the cash proceeds thereof which shall be held by Phillips for the benefit of MLPF in a segregated escrow account in trust, as provided in subparagraph (a) above. MLPF shall provide Phillips with all documents necessary to allow Phillips to release the liens of the Secured Party with respect to each Lot sold, and Phillips will hold such documents in escrow until we shall have received payment in full from the buyer of such Lot.

### 12. POST-AUCTION SALES

In the event that any Lot is unsold during an auction, we agree to so notify you and MLPF promptly. Each of you and MLPF hereby authorizes us, as the exclusive sales agent for such Property, for a period of 30 days following the auction to sell such Lot in a private sale for an amount resulting in payment to MLPF or your attorneys, as the case may be, of not less than the Net Sale Proceeds that would have been paid had the Lot sold for the Reserve at the auction or for such lesser amount as MLPF shall agree. Any post-auction sale is subject to the terms and conditions set forth in this Agreement.

### 13. UNSOLD PROPERTY

There will be no service charge in respect of any unsold Lot. We will return any Property remaining unsold following the expiration of the 30-day period referred to in Paragraph 12 above as provided in Paragraph 4 above.

### 14. INDEMNIFICATION

You agree to defend, indemnify and hold harmless each of us and the buyer of any Property from and against any and all claims, actions, liabilities, losses, damages and expenses of any kind (including

5

Consignor (Initials)   Phillips (Initials)

reasonable legal fees) relating to any breach or alleged breach (whether alleged by us or a third party) of any of your obligations, representations or warranties set forth in this Agreement. Your indemnification obligation hereunder shall survive the completion of the transactions contemplated by this Agreement.

### 15. LIMITATIONS ON OUR LIABILITY

(a) Our description of the Property is partly dependent upon the information provided by you and experts we may consult, the amount of research and any examination or testing we may reasonably and practically carry out prior to an auction and the generally accepted opinion of experts available at the time of cataloguing the Property. We shall exercise reasonable care when preparing catalogue descriptions and condition reports in a manner consistent with our role as auctioneers of a large number of lots and subject to the risks inherent to describing unique works of art and collectible items. Subject to the foregoing and to subparagraph (d) below, you and MLPF agree that we shall not be liable for (i) any errors or omissions in any oral or written information provided to you; (ii) any acts or omissions in connection with the preparation for or conduct of auctions or for any other matter relating to the sale of any Property; (iii) failure to sell the Property at all, at the Reserve or within the pre-sale estimates; (iv) any acts or omissions of restorers, experts, warehousemen or other contractors (or our selection of those contractors, on your behalf) or (v) acts or omissions of any shipping agent whether or not retained by us on your behalf except (A) as otherwise specifically stated in this Agreement, (B) arising out of our willful misconduct or (C) liability which the law does not permit us to disclaim.

(b) Without in any way diminishing the limitations on our liability set forth in this Paragraph 15 and subject to subparagraph (d) below, you and MLPF agree that in no event shall our liability from any cause whatsoever exceed (i) if any of the Property is not offered for sale for any reason, the mean of our latest pre-sale estimates on the Lots not offered, (ii) if the Property is sold, the aggregate Hammer Price of all sold Property or (iii) if any of the Property fails to sell, the Reserve on the unsold Lots.

(c) SUBJECT TO PARAGRAPH 15(d) BELOW, WE SHALL NOT BE LIABLE TO YOU OR MLPF FOR ANY LOSS OF PROFITS, LOSS OF BUSINESS, LOSS OF ANTICIPATED SAVINGS OR FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL COSTS, DAMAGES, CHARGES OR EXPENSES, TO THE FULLEST EXTENT PERMITTED BY LAW.

(d) No provision in this Agreement shall be deemed to exclude or limit our liability to you or MLPF in respect of (i) any fraud or fraudulent misrepresentation made by us, (ii) personal injury caused by our negligent acts or omissions, or (iii) our duties and responsibilities as receiver.

### 16. MISCELLANEOUS PROVISIONS

(a) The Proposal Letter is incorporated herein by reference, but to the extent this Agreement and the Order are inconsistent with the Proposal Letter, the former two documents shall control. This Agreement (including the Property Schedule and Payment Instructions), the Order and the Proposal Letter constitute the entire agreement among the parties with respect to the transactions contemplated herein and supersede all prior and contemporaneous written, oral or implied understandings, representations and agreements among the parties relating to the subject matter of this Agreement.

(b) No term of this Agreement shall be amended, supplemented or waived unless each of us and MLPF has agreed to do so in writing.

(c) This Agreement shall be binding upon the parties and their respective permitted successors and assigns. No party may assign this Agreement without the prior written consent of the other parties.

(d) Notices to Phillips must be in writing and addressed to the department in charge of the sale, quoting the Contract Number on the first page of this Agreement. Phillips shall send notices to you and MLPF at the address on the first page of this Agreement, unless after the date of this Agreement you or MLPF, as the case may be, shall have notified the department in charge of the sale in writing of a different address, in which case we will address any notices at that address. Notices shall be

deemed to have been given five calendar days after mailing to the address referred to above or within one business day of delivery by hand, facsimile or email.

(e) This Agreement shall be governed by the laws of the State of New York, without giving effect to New York's choice of law provisions (other than New York General Obligations Law § 5-1401). If there is a dispute concerning the Property or this Agreement, the parties consent to the exclusive jurisdiction of the United States District Court for the Southern District of New York, which shall have continuing jurisdiction over this Agreement pursuant to the Order. The parties waive any objection to proceeding in such courts based on the legal doctrine of forum non conveniens.

(f) This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

PHILLIPS de PURY & COMPANY LLC

By: _____
Aileen Agopian
Contemporary Art, New York

BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT

By: _____
Halsey Minor

THE HALSEY MCLEAN MINOR REVOCABLE TRUST
DATED NOVEMEBER 3, 2004

By: _____
Halsey Minor, Trustee

ML PRIVATE FINANCE LLC

By: _____
Name: Nathaniel Cook
Title: Director

7

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

## PROPERTY SCHEDULE

Estimates and Reserves in USD

Sale  Sale Number: TBD    Contemporary Art & Design: The Collection of Halsey Minor    13 May 2010

| Object Number | Lot Description | Low Estimate | High Estimate | Reserve |
|---|---|---|---|---|
| 50113 | JOHN BALDESSARI - Pink Pig, 2305 Highland Ave., National City California | 400,000 | 600,000 | |
| 50114 | JOHN BALDESSARI - Two Cars, One Red, in Different Environments | 300,000 | 400,000 | |
| 50115 | RONAN & ERWAN BOUROULLEC - 'Rizlère' low table | 20,000 | 30,000 | |
| 50116 | MARK GROTJAHN - Untitled (White Butterfly) | 800,000 | 1,200,000 | |
| 50117 | MARK GROTJAHN - Untitled (Pink Butterfly Green MG03) | 300,000 | 400,000 | |
| 50138 | MARK GROTJAHN - Untitled | 60,000 | 80,000 | |
| 50139 | FLORIAN MAIER-AICHEN - Mount Wilson | 100,000 | 150,000 | |
| 50140 | FLORIAN MAIER-AICHEN - Above June Lake | 100,000 | 150,000 | |
| 50141 | JASPER MORRISON - 'Cabinet A' | 40,000 | 60,000 | |
| 50142 | JASPER MORRISON - 'Carrara' table | 30,000 | 40,000 | |
| 50143 | TAKASHI MURAKAMI - Po + Ku Surrealism Mr. Dob | 1,000,000 | 1,500,000 | |
| 50144 | TAKASHI MURAKAMI - Jellyfish Eyes - Max & Shimon in the Strange Forest | 400,000 | 600,000 | |
| 50145 | GEORGE NAKASHIMA - Minguren I' coffee | 100,000 | 150,000 | |

1



Consignor (Initials):   Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3308

Client Number: 20187
Contract Number: 04NY5660

| | | | |
|---|---|---|---|
| | table | | |
| 50146 | MARC NEWSON - Prototype 'Lockheed Lounge' | 1,200,000 | 1,800,000 |
| 50147 | MARC NEWSON - Prototype 'Pod of Drawers' chest | 500,000 | 700,000 |
| 50148 | MARC NEWSON - 'Pod of Drawers' chest | 300,000 | 500,000 |
| 50149 | MARC NEWSON - Prototype 'Orgone' lounge | 400,000 | 600,000 |
| 50150 | MARC NEWSON - 'Event Horizon' table | 250,000 | 350,000 |
| 50151 | MARC NEWSON - Prototype 'Voronoi' shelf | 150,000 | 200,000 |
| 50152 | MARC NEWSON - Conference table with eight chairs | 60,000 | 80,000 |
| 50153 | MARC NEWSON - 'Dark Star' table | 50,000 | 70,000 |
| 50154 | RICHARD PRINCE - Nurse in Hollywood #4 | 5,000,000 | 7,000,000 |
| 50155 | RICHARD PRINCE - Chatterbox Hotel | 800,000 | 1,200,000 |
| 50156 | ED RUSCHA - Higher Standards/Lower Prices | 1,500,000 | 2,500,000 |
| 50157 | ED RUSCHA - Angry Because It's Plaster, Not Milk | 2,000,000 | 3,000,000 |
| 50158 | MARTIN SZEKELY - 'White Table' | 40,000 | 60,000 |
| 50308 | DAVID HOCKNEY - Gregory in the Pool 1 (Paper Pool 4) | 250,000 | 350,000 |
| 50310 | FLORIAN MAIER-AICHEN - The Best General View | 80,000 | 120,000 |
| 50312 | TAKASHI MURAKAMI - Flower Ball (3-D) Kindergarten | 400,000 | 600,000 |
| 50313 | YOSHITOMO NARA - Little Grin | 250,000 | 350,000 |
| 50314 | RICHARD PRINCE - Untitled (Almost Original) | 200,000 | 300,000 |
| 50318 | ED RUSCHA -- Long | 800,000 | 1,200,000 |

2

 Consignor (Initials)    Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

| | | | | |
|---|---|---|---|---|
| | Story | | | |
| 50319 | ED RUSCHA - Three O'Clock | 150,000 | 250,000 | |
| 50320 | DIRK SKREBER - Untitled | 200,000 | 300,000 | |
| 50673 | MARC NEWSON - Black Hole Table | 80,000 | 120,000 | |
| 50674 | MARC NEWSON - Prototype Micarta Desk, | 150,000 | 200,000 | |
| 50675 | ISAMU NOGUCHI - A galvanized steel pierced table | 50,000 | 70,000 | |
| 50676 | CHARLOTTE PERRIAND - Bibliotheque Asymetrique Bookshelf | 100,000 | 150,000 | |
| 50677 | CHARLOTTE PERRIAND - Bibliotheque Murale Bookshelf | 50,000 | 70,000 | |
| 50877 | MARTIN SZEKELY - A silicon carbide mirror | 12,000 | 18,000 | |
| 51338 | WALTON FORD - The Loss of the Lisbon Rhino | 500,000 | 700,000 | |
| 50646 | WALTON FORD - La Fontaine | 250,000 | 350,000 | |

Sale Number: NY010210   Contemporary Art Part II   14 May 2010

| Object Number | Lot Description | Low Estimate | High Estimate | Reserve |
|---|---|---|---|---|
| 50321 | DAVID SMITH Untitled, 1962 Spray enamel on paper. 18 x 22 3/4 in. (45.7 x 57.8 cm.) | 60,000 | 80,000 | |
| 50322 | DAVID SMITH Untitled, 1962 Spray enamel on paper 13 1/8 x 19 1/8 in. (33.3 x 48.6 cm.) | 50,000 | 70,000 | |
| 50309 | FLORIAN MAIER-AICHEN – Untitled, 2007 | 30,000 | 40,000 | |
| 50311 | FLORIAN MAIER-AICHEN - Rügenlandschaft | 40,000 | 60,000 | |
| 50315 | ED RUSCHA - Busted Glass #8 | 30,000 | 50,000 | |

3

 Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

| | | | |
|---|---|---|---|
| 50316 | ED RUSCHA - Busted Glass #10 | 30,000 | 50,000 |
| 50317 | ED RUSCHA - Busted Glass #12 | 30,000 | 50,000 |
| 50647 | MICHAEL EASTMAN – Horse #115 | 5,000 | 7,000 |
| 50648 | TODD EBERLE – American Flag, Millerton, New York | 8,000 | 12,000 |
| 50649 | TODD EBERLE – The Red Rooster, Brewster, New York | 8,000 | 12,000 |
| 50650 | WALTON FORD – Dying Works | 4,000 | 6,000 |
| 50651 | GAJIN FUJITA – Golden State Warriors | 50,000 | 70,000 |
| 50652 | GAJIN FUJITA – Tall Whip | 30,000 | 40,000 |
| 50654 | DENNIS HOPPER – Double Standards | 20,000 | 30,000 |
| 50656 | DENNIS HOPPER – John Wayne and Dean Martin | 7,000 | 9,000 |
| 50657 | DENNIS HOPPER – Dennis Hopper | 7,000 | 9,000 |
| 50659 | DENNIS HOPPER – Andy Warhol & Members of the Factory | 7,000 | 9,000 |
| 50660 | DENNIS HOPPER – Ed Ruscha | 7,000 | 9,000 |
| 50664 | MIKE KELLEY – Garbage Drawing #37 | 20,000 | 30,000 |
| 50665 | LEON KOSSOFF – The Judgment of Soloman #1 | 20,000 | 30,000 |
| 50666 | RYAN MCGINNESS - Sexes | 20,000 | 30,000 |
| 50667 | ED RUSCHA – Gasoline Stations (10 works) | 80,000 | 120,000 |
| 50668 | ED RUSCHA – Pools, 1968/1997 | 80,000 | 120,000 |
| 50669 | DIRK SKREBER – Untitled (Compound) | 120,000 | 180,000 |
| 50323 | DAVID SMITH Untitled, 1963 Spray enamel on paper. 13 x 19 in. (33 x 48.3 cm). | 50,000 | 70,000 |

4

Consignor (Initials)    Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

| Object Number | Lot Description | Low Estimate | High Estimate | Reserve |
|---|---|---|---|---|
| 50324 | DAVID SMITH Untitled, 1962 Spray enamel on paper. 12 3/4 x 19 in. (32.4 x 48.3 cm.) | 50,000 | 70,000 | |
| 50325 | DAVID SMITH Untitled, 1962 Spray enamel on paper. 11 1/8 x 17 1/8 in. (28.3 x 43.5 cm). | 50,000 | 70,000 | |
| 50653 | DENNIS HOPPER – Untitled (Barn Shadow) | 7,000 | 9,000 | |
| 50655 | DENNIS HOPPER – Bad Heart (Downtown Los Angeles) | 7,000 | 9,000 | |
| 50658 | DENNIS HOPPER – News Is Daily Again | 7,000 | 9,000 | |
| 50661 | DENNIS HOPPER – Bruce Conner's Physical Services | 7,000 | 9,000 | |
| 50662 | DENNIS HOPPER – Tom Poster (Elect) | 7,000 | 9,000 | |
| 50663 | DENNIS HOPPER – Willie Thomas | 7,000 | 9,000 | |
| 51232 | DENNIS HOPPER - Selma, Alabama (Full Employment) | 7,000 | 9,000 | |

Sale Number: NY050110   Design   5 June 2010

| Object Number | Lot Description | Low Estimate | High Estimate | Reserve |
|---|---|---|---|---|
| 50160 | MARC NEWSON - 'Insect' armchair | 30,000 | 50,000 | |
| 50163 | MARC NEWSON - 'Super Guppy' floor lamp | 10,000 | 15,000 | |
| 50164 | MARC NEWSON - 'Embryo' chair | 3,000 | 5,000 | |
| 50166 | MARC NEWSON - 'Gello' table | 2,000 | 3,000 | |
| 51224 | PAUL DUPRE-LAFON - A patinated metal, oak and parchment table | 150,000 | 200,000 | |
| 51225 | PAUL DUPRE-LAFON - A lacquered mohagany vaer de nuit | 10,000 | 15,000 | |
| 51226 | PAUL DUPRE-LAFON - A massacar | 100,000 | 150,000 | |

5

Consignor (Initial)   Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

| | | | |
|---|---|---|---|
| | ebony, leather and gilt fell front desk | | |
| 51227 | PAUL DUPRE-LAFON - A pair of wrought iron, leather and macassar ebony side tables | 30,000 | 40,000 |
| 51228 | PAUL DUPRE-LAFON - A leather and velvet upholstered sofa | 70,000 | 90,000 |
| 51229 | PAUL DUPRE-LAFON - A pair of wood upholstered armchairs | 35,000 | 45,000 |
| 51230 | DIEGO GIACOMETTI - Console "Hommage to Boecklin", 1978 | 150,000 | 200,000 |
| 51231 | DIEGO GIACOMETTI - Bronze Couplelle | 12,000 | 18,000 |
| 51233 | JASPER MORRISON - Handlebar Table | 12,000 | 18,000 |
| 51234 | JEAN ROYERE - Low side table | 15,000 | 20,000 |
| 51235 | JEAN ROYERE - Mirror | 10,000 | 15,000 |
| 51236 | UNKNOWN - Table | To be determined | To be determined |

Design Private Sale

| Object Number | Lot Description | Low Estimate | High Estimate |
|---|---|---|---|
| 50167 | MARC NEWSON - 'Pod of Drawers' chest | 300,000 | 500,000 |
| 50168 | MARC NEWSON - Unique 'Event Horizon' table | 250,000 | 350,00 |
| 50159 | MARC NEWSON - 'Micarta' desk | 120,000 | 180,000 |

Contemporary Art Private Sale

| Object Number | Lot Description | Low Estimate | High Estimate |
|---|---|---|---|
| 50306 | MARK GROTJAHN - Untitled (Black Butterfly over Lime) | 300,000 | 400,000 |
| 50307 | MARK GROTJAHN - Untitled (Cream Butterfly) | 40,000 | 60,000 |

6

Consignor(s) (Initials)      Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

Client Number: 20187
Contract Number: 04NY5660

7

_____ _____
Consignor (Signature)     Phillips (Initials)

450 WEST 15TH STREET NEW YORK, NY 10011 TELEPHONE +1 212 940 1200 FAX +1 212 924 3306

## PAYMENT INSTRUCTIONS

TO BE SUPPLIED BY BOTH ML PRIVAYE
FINANCE LLC AND CONSIGNOR