UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                              :

M.L. PRIVATE FINANCE LLC,                :         08 Civ. 11187 (SHS)
                                                             :
                                Plaintiff,           :
                                                              :         <u>OPINION & ORDER</u>
                                                              :
                 -against-                          :
                                                               :
HALSEY MCLEAN MINOR, THE HALSEY          :
MCLEAN MINOR TRUST DATED NOVEMBER :
3, 2004, and DOES 1 through 50,                     :
                                                              :
                               Defendants.          :
                                                              :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

       Plaintiff M.L. Private Finance LLC ("MLPF") moves pursuant to Local Civil Rule 6.3 for reconsideration of this Court's Order dated April 4, 2011, granting the motion of defendants Halsey McLean Minor and The Halsey McLean Minor Revocable Trust (collectively, "defendants" or "Minor") to terminate the receiver and discharge the liens asserted over certain artwork owned by Minor. MLPF seeks reconsideration only insofar as the April 4 Order permitted the discharge of MLPF's secured interest in collateral that was not subject to the Receivership Order dated April 1, 2010. For the reasons set forth below, plaintiff's motion for reconsideration is denied.

**I. BACKGROUND**

       MLPF brought this diversity action to recover money it had lent to defendants pursuant to a promissory note defendants did not repay. MLPF and Minor had entered into a Loan Agreement whereby Minor borrowed in excess of $20 million from MLPF. The Loan Agreement granted MLPF a "continuing first-priority lien and security interest"

in certain artwork pledged as collateral until defendants' obligations under the Loan Agreement had "indefeasibly been paid and performed in full." (Loan Agreement, Ex. 1 to Decl. of James W. Kennedy dated Oct. 7, 2010 at 18, 32, Dkt. No. 138.)

In October 2009, the Court granted plaintiff's motion for summary judgment on its claims for a money judgment of $21,502,907.60 on the promissory note as well as payment of the costs and fees incurred in collecting on that note (the "Costs of Collection"). The Court also granted plaintiff's motion to dismiss defendants' counterclaims. Plaintiff moved for entry of an order of final judgment solely with respect to Count One for breach of the promissory note pursuant to Federal Rule of Civil Procedure 54(b). In support of the motion, plaintiff wrote that the "Eleventh Cause of Action for costs of collection of the debt is a separate contract right, involving separate damages." (Pl.'s Letter dated Oct. 21, 2009, Dkt. No. 79.) The Court granted that motion and directed that Rule 54(b) final judgment be entered only on Count One plaintiff's claim for payment of the promissory note. (Rule 54(b) Order dated Oct. 23, 2009, Dkt. No. 80.) The Court also directed plaintiff to submit an application for its Costs of Collection. (Order dated Oct. 23, 2009, Dkt. No. 82.)

In November 2009, plaintiff submitted its first application for costs, which included the fees and the costs it incurred in litigating *Minor v. ML Private Finance LLC*, BC 409337 (Cal. App. Dep't Super. Ct.), a separate action in California state court between plaintiff and Minor (the "California action"). In April 2010, the Court granted that application in part, awarding MLPF $1,268,655.00 as its collection costs in litigating this action through October 2009. However, the Court determined that the costs MLPF had incurred in litigating the California action were not recoverable under the parties' Loan

Agreement.  (*See* Transcript of April 1, 2010 hearing at 7:10-12; Order dated Apr. 1, 2010, Dkt. No. 112.)  During the next nine months, MLPF continued to accrue collection costs in its efforts to enforce the money judgment on Count One in this action and, thereafter, to obtain its legal fees and expenses.  Based on those accruing fees and expenses, the Court granted MLPF's three successive applications for Costs of Collection in an amount totaling $659,371.42.  (*See* Orders dated Nov. 12, 2010, Dec. 22, 2010, and Jan. 26, 2011, Dkt. Nos. 151, 157, 162.)

The Court also appointed Phillips, de Pury & Company, LLC as Receiver for all property of defendants in the possession of Christie's auction house and the Paul Kasmin Gallery, including artwork that defendants had pledged as collateral in the Loan Agreement.  (Receivership Order dated Apr. 1, 2010, Dkt. No. 111.)  In the Receivership Order, the Court directed Phillips to sell the artwork and to deliver the proceeds to MLPF in satisfaction of the money judgment on the promissory note.  Phillips has done so.

In October 2010, defendants filed a motion seeking to terminate the Receivership and to discharge the Uniform Commercial Code liens that MLPF had filed on defendants' artwork.  Defendants argued that such relief was warranted because they had fully paid the $21,502,907.60 money judgment on the promissory note and the $177,671.68 in pre- and post-judgment interest on that judgment.  Minor also urged that if the liens were not released he would be severely prejudiced because he would be unable to sell the encumbered art to pay massive debts owed other creditors.  MLPF did not dispute that the underlying judgment and interest had been paid, but opposed the motion on several grounds, chief among them that granting such relief was premature given that defendants had not fully paid plaintiff's collection costs.

3

In a March 22, 2011 letter, defendants informed the Court that they had fully paid MLPF's court-awarded Costs of Collection, including all outstanding interest as well as additional costs that MLPF had incurred since the fourth application and therefore requested that the Court grant their motion to terminate the receiver and discharge the liens. Plaintiff did not dispute that everything the Court determined plaintiff was due had been paid to plaintiff. Nevertheless, MLPF argued that Minor's motion should be denied because, in addition to its previous opposition to the motion, (1) MLPF had recently filed a cross-complaint against Minor in the California action seeking indemnification in that action,[1] and (2) one of Minor's companies, Carter Grove LLC, had recently filed a voluntary bankruptcy petition.

In an Order dated April 4, 2011, this Court found that neither MLPF's cross-complaint in the California action nor the Carter Grove bankruptcy provided a basis for keeping the liens in place and, having determined that defendants had paid the judgment and all court-awarded Costs of Collection in this action, granted defendants' motion. On April 18, 2011, plaintiff moved for reconsideration of that Order.

## II. DISCUSSION

A request for reconsideration under Local Civil Rule 6.3 "must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *Hinds Cty., Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 369 (S.D.N.Y. 2010). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and

---

[1] In the cross-complaint, MLPF seeks to recover from Minor pursuant to section 10.2, the "Costs of Collection" provision, and section 10.5(b), a general indemnification provision, in the Loan Agreement for costs, fees, and expenses that MLPF has incurred and will continue to incur in the California action.

4

decided." *Id.* (citation omitted). The standard for granting such a motion is strict. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

MLPF urges reconsideration on the basis of the same arguments it raised in its brief opposing defendants' motion to terminate the receiver and discharge the liens. Plaintiff has not proffered new or overlooked evidence or any legal authority binding on the Court that might reasonably be expected to alter this Court's April 4 Order. Nonetheless, according to plaintiff, the Court's April 4 Order did not address the following assertions made by plaintiff: (1) that the Court lacked subject matter jurisdiction to order the release of liens on collateral that was not included in the Receivership Order, and (2) that release of the liens was improper because defendants still have contingent obligations under the Loan Agreement. Because the Court has already considered plaintiff's arguments and, in any event, they do not alter the Court's decision to grant defendants' motion to terminate the receiver and discharge the liens, the motion for reconsideration is denied.

A. <u>Subject Matter Jurisdiction</u>

Plaintiff does not dispute that the Court had jurisdiction in the plenary action over the collateral in the Loan Agreement. Indeed, in the amended complaint, MLPF requested that the Court enter an order of "specific performance" requiring defendants to

deliver the collateral to MLPF. (Am. Compl. ¶ 101.)[2] Rather, plaintiff asserts that the Court should not have permitted the release of liens in collateral outside the Receivership because, plaintiff contends, the Court decided defendants' motion during ancillary proceedings. "[T]he doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Although the "boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity," *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006), ancillary jurisdiction is intended "to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and . . . to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007).

   *1. Defendants' motion was made and decided during plenary proceedings*

Contrary to plaintiff's assertion, this action was still in plenary proceedings both when Minor's motion was made and when it was decided. Even now, no final judgment has been entered on plaintiff's claim for recovery of its Costs of Collection or on the dismissal of defendants' counterclaims. *See Covanta Onondaga v. Onondaga Cnty. Res. Recovery Agency*, 318 F.3d 392, 396 (2d Cir. 2003) (a court's jurisdiction is limited once it has concluded "its adjudication of the merits of a case . . . by entering a *final* judgment . . ." (emphasis added)).

---

[2] That request, which plaintiff later withdrew, was based on section 8.2(b) of the Loan Agreement, which states that if defendants are in default of the Loan Agreement, they shall authorize MLPF to "retrieve, seize, and/or repossess" the collateral. (*Id.* ¶ 94.)

6

In addition, from November 2009 to January 2011, MLPF filed four separate applications *seriatim* seeking its Costs of Collection. In deciding whether to grant plaintiff's applications, the Court was repeatedly required to determine the parties' rights under the Loan Agreement in particular, whether plaintiff could recover in this action (1) costs it had incurred in the California action and (2) costs it had incurred in opposing Minor's motion to terminate the receiver and discharge the liens. *See Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999) ("A judgment is said to be final if it conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order or resolve collateral issues."(internal citations omitted)). Because defendants' motion was made and decided during plenary proceedings, the Court had the authority to order the discharge of the liens.

> 2. *The Court had jurisdiction to release the liens even if defendants' motion was made and decided during ancillary proceedings*

Even assuming *arguendo* that defendants' motion was made and decided in ancillary proceedings, the Court finds that ordering the discharge of the liens is within its ancillary jurisdiction. The Court was uniquely positioned to determine that the liens should be released because this action put the parties' Loan Agreement and plaintiff's right under the Loan Agreement to assert liens on defendants' property squarely before the Court. The exercise of ancillary jurisdiction was thus appropriate because the "subsidiary controversy" related to release of the liens had a "direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977) (internal quotation marks omitted).

7

In the almost two-and-one-half years since this litigation began, the Court has expended significant time and resources dealing with issues related to the scope of the Loan Agreement and, through the Receivership, plaintiff's liens on defendants' artwork. Thus, the interests of judicial economy weighed in favor of the Court exercising its ancillary jurisdiction in order to decide defendants' motion, rather than requiring that defendants seek the same relief in a forum less knowledgeable about the parties, the Loan Agreement, and the liens at issue. *See Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991) (stating that determination of "whether to exercise ancillary jurisdiction is discretionary, and is informed by considerations of judicial economy, convenience, and fairness to litigants").

The final question is whether the Court had jurisdiction over all or just a subset of the collateral under the Loan Agreement. MLPF claims that, after the Court's entry of the April 2010 Order appointing a Receiver, the Court no longer had jurisdiction over collateral that defendants had pledged in the Loan Agreement but that was not included in the Receivership Order. However, MLPF has not articulated any legal basis for this assertion. Moreover, it is unlikely that plaintiff would be making this argument if the sale proceeds from the artwork subject to the Receivership Order had not satisfied plaintiff's money judgment and Costs of Collection. Had it been necessary to satisfy the judgment, the Court certainly had the authority to modify the Receivership Order to authorize the Receiver to collect and sell the remaining collateral under the Loan Agreement. *See* N.Y. C.P.L.R § 5228. Accordingly, plaintiff's claim that the Court only had jurisdiction over collateral that was subject to the Receivership Order is without merit.

B.  <u>Defendants' Obligations Under the Loan Agreement</u>

Plaintiff also maintains that its liens should remain in place until its right to recover under the Loan Agreement for expenses incurred in the California action is conclusively determined, both on appeal from a final judgment in this action to the Second Circuit as well as in the California action itself.  Under section 9.1(b) of the Loan Agreement, MLPF has a perfected security interest in the collateral until all "Obligations have been indefeasibly been paid and performed in full." (Loan Agreement at 32.)  The term "Obligations" is, in turn, defined as "all of the indebtedness, liabilities and obligations of the Borrower to the Lender . . . whether now existing or hereafter arising, whether or not currently contemplated, contingent or otherwise . . . ." (*Id.* at 4.)  Based on this language in the Loan Agreement, MLPF asserts that contingent obligations currently exist because (1) the California court has yet to decide MLPF's claim for indemnification against Minor in that action, and (2) it intends to appeal this Court's ruling that expenses MLPF has incurred in the California action are not recoverable collection costs under the Loan Agreement.

This Court is not persuaded that defendants have any remaining obligations under the Loan Agreement.  Plaintiff's interpretation of the term "Obligations" in the Loan Agreement admits of no limiting principle.  The California action is based on MLPF's alleged violation of California's Fair Debt Collection Practices Act and Unfair Business Practices Act.  It does not concern, as this action does, MLPF's recovery on the promissory note.  Nevertheless, according to MLPF, its mere assertion of a claim against Minor in that action that invokes an indemnification provision in the Loan Agreement—

9

regardless of the merits of that claim creates a contingent obligation. MLPF cites no legal authority whatsoever for this proposition.[3]

Similarly, MLPF asserts that the single fact that it has stated it intends to appeal this Court's ruling on the Costs of Collection issue and the possibility of a reversal on appeal creates a contingent obligation. MLPF cites two district court cases, *Merrill Lynch Interfunding v. Argenti*, 00 Civ. 933, 2000 WL 490739 (S.D.N.Y. Apr. 26, 2000), *aff'd*, 2 Fed. Appx. 98 (2d Cir. 2001) (unpublished summary order), and *United States v. Pound*, 07 Civ. 427, 2010 WL 2330240 (E.D. Okla. June 8, 2010) for the proposition that a secured creditor may retain its security interest in collateral while an appeal from an adverse ruling concerning the underlying debt is pending. Neither case is controlling and both are distinguishable.

In *Argenti*, the defendants signed notes payable to the plaintiff in the amount of $6,950,000, secured by two mortgages and a security interest in artwork. When the plaintiff sued to enforce the loan, the defendants counterclaimed that the plaintiff had breached the loan agreement, and the jury agreed, reducing the defendants' liability on the note to $735,179. The defendants argued that the plaintiff wrongfully refused to release the mortgages and liens in return for the defendants' offer to pay the $735,179 judgment. *Argenti* is distinguishable from the instant action because, in that case, the claim was based on Connecticut law, the plaintiff had already appealed the trial court judgment by the time the defendants requested release of the mortgages and liens, and the defendants had not paid the plaintiff on the underlying judgment, let alone the full amount of the

---

[3] The Court also notes that the assertion of MLPF's cross-complaint in California may be an effort to create a contingent obligation where none exists. Although Minor commenced the California action in March 2009, MLPF's indemnification claim against Minor in that action was not filed until two years later, in February 2011.

original notes payable. In this action, by contrast, no appeal is pending and defendants have paid the entirety due on the underlying promissory note and interest, as well as all court-awarded Costs of Collection. In *Pound*, no party had requested that the liens be released and the court explicitly wrote that its discussion of the liens was "obiter dictum." *Pound*, 2010 WL 2330240 at *1.

In furtherance of its argument that contingent obligations remain, MLPF states that "were [it] to prevail on an appeal or in the California litigation on [the indemnification claim], defendants would have additional indebtedness under the Loan Agreement." (Pl.'s Mem. of Law at 6.) True, but plaintiff has not provided any support for construing the definition of "Obligations" in the Loan Agreement so broadly as to encompass anything and everything that might happen in the future in other fora. The Court thus finds that defendants' obligations do not extend to their hypothetical future indebtedness arising out of the possible success on a potential appeal from this Court's judgment or the resolution of plaintiff's indemnification claim in the California action.

Finally, MLPF insists that it is a manifest injustice for liens on property outside the Receivership to be discharged because it will make it more difficult for MLPF to collect any future judgments it might obtain against defendants. Although the Court sympathizes with MLPF's legitimate concern, given the length of time it has taken and expense incurred in order to collect a massive debt that Minor simply refused to pay when due, its plight hardly rises to the level of manifest injustice. Not only has it received its full $21,680,579.28 recovery on the promissory note and the interest on that note, but it has also already received nearly two million dollars from defendants in attorneys' fees and costs. It has, in short, been made whole in this litigation.

## III. CONCLUSION

Based on the foregoing, the Court concludes that it has subject matter jurisdiction to order the discharge of the liens; that defendants have paid the judgment and all Costs of Collection in this action; and that defendants currently have no other obligations under the Loan Agreement. Plaintiff's motion for reconsideration is denied. The parties are directed to submit a joint proposed final judgment to the Court on or before May 31, 2011.

Dated: New York, New York
       May 19, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.